UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| HESTER FRY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:05-cv-148 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. Plaintiff filed her SSI application on November 28, 2000. (A.R. 31-33). Plaintiff's car was rear-ended in a June 2000 collision and plaintiff claimed a a June 18, 2000 onset of disability.[1] (A.R. 31). On April 2, 2001, plaintiff's claim was denied on initial review, and as a disability redesign prototype case it was not subjected to review at the reconsideration stage. (A.R. 22). On August 21, 2002, plaintiff received a hearing before an administrative law judge (ALJ) at which plaintiff was represented by counsel. (A.R. 267-85). On October 17, 2002, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-21). Almost three years later, on September 21, 2005, the Appeals Council denied review (A.R. 5-7), and

---

[1] SSI benefits are not awarded retroactively or for the month during which the application is filed. 20 C.F.R. § 416.335; *see Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). Thus, plaintiff could not have been entitled to SSI benefits for any month before December 2000, despite her claim of an earlier onset of disability.

the ALJ's decision became the Commissioner's final decision. On October 14, 2005, plaintiff filed her complaint in this court seeking review of the Commissioner's decision denying her claim for SSI benefits. Plaintiff's statement of error is set forth verbatim below:

> THE COMMISSIONER HAS ERRED IN FAILING TO PROPERLY ASSESS PLAINTIFF'S PSYCHIATRIC RESIDUAL FUNCTIONING.

(Plf. Brief at 3, docket # 8). Upon review, I find that plaintiff's argument does not provide any basis for disturbing the Commissioner's decision, and recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## **Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had degenerative disc disease of the cervical spine and that this condition constituted a severe impairment. Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the Listing of Impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible:

> The Administrative Law Judge finds that the medical evidence does not demonstrate any debilitating complications from the claimant's alleged impairments. Although she has some limitations from her impairment, her symptoms and limitations are not credible to the extent alleged, nor supported by the objective evidence of record. The claimant's description of the severity of the pain has been so extreme as to appear implausible. Also, given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

(A.R. 18). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> [C]laimant can lift/carry up to 20 pounds occasionally and 10 pounds frequently. She can walk/stand six hours of an eight-hour workday and sit about six hours of an eight-hour workday. She requires the option to sit or stand as needed. She should never use vibratory, torque, or power tools. She cannot engage in repetitive bending or turning of the neck. Due to pain, the claimant is only moderately limited in her ability to maintain attention and concentration for extended periods.

(A.R. 20). The ALJ found that plaintiff could not perform her past relevant work. Plaintiff was 41 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. Plaintiff has a high school or high school equivalent education. The ALJ found that plaintiff did not have transferrable work skills. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE identified approximately 10,500 jobs within the lower two-thirds of Michigan's Lower Peninsula that plaintiff would be capable of performing. (A.R. 282-83). The ALJ held that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-21).

Plaintiff argues that the ALJ's decision should be overturned because the ALJ failed to "properly assess" her "psychiatric residual functioning." (Plf. Brief at 3). Upon review, I find that plaintiff's argument is meritless. Plaintiff had the burden of submitting evidence establishing the existence of her disability. *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff had no history of psychiatric or psychological treatment or hospitalization. No physician or other medical professional offered an opinion that plaintiff suffered from any form of mental impairment. Nothing plaintiff or her attorney submitted to the ALJ before or after the hearing suggested that plaintiff had a mental impairment. (A.R. 8, 10, 27, 48). Plaintiff testified that she had

problems with her neck, back, and left thigh (A.R. 274), and that those impairments prevented her from working. Plaintiff testified that she had no problems using her right hand. (A.R. 279). Plaintiff's attorney did not elicit, and plaintiff did not offer, any testimony that she suffered from mental impairments. Plaintiff's attorney never requested that the ALJ defer a decision on plaintiff's claim for SSI benefits so that plaintiff could obtain an assessment of a mental impairment. It is against this backdrop that plaintiff's arguments must be evaluated.

Plaintiff argues that the "ALJ apparently accept[ed] some aspect of a psychiatric impairment when he conclude[d] the existence of a moderate impairment in [plaintiff's] ability to concentrate." (Plf. Brief at 4). The ALJ never "accepted" that plaintiff had any form of "psychiatric impairment." The ALJ simply made a credibility determination, and partially credited plaintiff's testimony (A.R. 279) that pain from her physical impairments and side effects from her medications had an adverse impact on plaintiff's ability to maintain attention and concentration for extended periods. However, the ALJ found that overall, plaintiff's subjective complaints were highly exaggerated: "The claimant's description of the severity of the pain has been so extreme as to appear implausible." (A.R. 18). The record provides more than substantial evidence supporting the ALJ's credibility determination.

Plaintiff contends that the ALJ failed to make a "functional assessment" of her "hysterical [left upper extremity] tremor, which would apparently be a psychiatric[ally] based impairment." (Plf. Brief at 4). The record shows that plaintiff displayed occasional, variable movements of her left arm or hand during some medical evaluations. Doctors were unable to come up with a diagnosis for the movements they witnessed. Following the June 2000 car accident, plaintiff began displaying variable movements of her left arm and hand. On August 3, 2000,

Theodore C. delaCruz, M.D. performed an anterior microcervical discectomy at C5-6 (A.R. 64-65), and on August 22, 2000, plaintiff reported to her treating neurosurgeon that her left hand tremors were "gone" (A.R. 51). On November 16, 2000, plaintiff advised her treating physician, Joseph Glasheen, M.D., that her tremors were "very variable." (A.R. 258). Dr. Glasheen referred plaintiff for a consultative examination for possible Parkinson's Disease. On November 30, 2000, Glen N. Ackerman, M.D., Director of the Parkinson's Disease Clinic in the Department of Neurology and Ophthalmology at Michigan State University, performed this evaluation. (A.R. 198-99). Plaintiff did not have Parkinson's disease. Dr. Ackerman stated, "The patient is having a coarse tremor of the left arm at rest, with use, and in sustained posture. The tremor however is inconsistent and irregular. It stops entirely when the patient is distracted." (A.R. 199). Dr. Ackerman found no organic explanation for the tremor behavior. He reiterated that plaintiff's tremor stopped completely when she was distracted, and was irregular during conversation. (A.R. 199). Dr. Ackerman stated that plaintiff's tremor had the "appearance" of a psychogenic tremor (hysterical tremor)(A.R. 199), but Dr. Ackerman never offered a definitive diagnosis. (A.R. 199). No psychological, psychiatric, or medical test results linked plaintiff's tremors to a mental or physical impairment.

On March 13, 2001, plaintiff told Mark Schaar, M.D., that she suffered from "left arm tremors." (A.R. 80). During a May 15, 2001 consultative examination performed by Kenneth Rudman, M.D., plaintiff presented tremors in her left hand and arm. Dr. Rudman noted that these movements "disappeare[ed] at times." (A.R. 207). Plaintiff reported weakness in her left hand and claimed that she could not pick up anything with it. (A.R. 206). Dr. Rudman found that plaintiff's motor strength in her left upper extremity was "four out of five throughout." (A.R. 208). Dr. Rudman noted plaintiff's pain behaviors made it difficult to assess her functional limitations. (A.R.

-6-

207-08). Progress notes dated July 26, 2002, from Pamela Thompson, M.D., state: "She has also had some shakes since the accident. She has seen Dr. Ackerman. There has been no definitive diagnosis regarding the shakes." (A.R. 266). Plaintiff's August 2, 2002 hearing testimony (A.R. 271-80) did not mention left hand or arm tremors, much less establish that tremors resulted in significant functional limitations.

Plaintiff's argument that the ALJ failed to make a "functional assessment" of plaintiff's tremor problem is completely undermined by the ALJ's discussion of plaintiff's tremors in his opinion. (A.R. 16-18). The ALJ's RFC determination included restrictions against plaintiff's use of vibratory, torque or power tools. (A.R. 18, 21).

Plaintiff cites 42 U.S.C. § 421(h)[2] for the proposition that the ALJ "unlawfully failed to evaluate the Plaintiff's psychiatric condition in a manner required by statute." (Plf. Brief at 3-4). Section 421(h) does not apply to the ALJ's decision. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997)(The ALJ was not required to comply with section 421(h) because the statute does not apply to the ALJ's decision made at the administrative hearing stage); *see also Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999)("42 U.S.C. § 421(d), which covers hearing before an ALJ, is excluded from § 421(h)'s purview . . . ."); *accord Owen v. Chater*, No. 96-5571, 1997 WL 251918, at * 3 (6th Cir. May 13, 1997).

---

[2]"An initial evaluation under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h).

Plaintiff's remaining argument, that the ALJ failed to complete a psychiatric review technique form (PRTF) (Plf. Brief at 4-5), requires little discussion.[3] More than two years before the ALJ issued his decision, the requirement that an ALJ complete a PRTF form had been eliminated. *See* 65 Fed. Reg. 50746 (Aug. 21, 2000), 65 Fed. Reg. 60584 (Oct. 12, 2000)(correcting error in final rules); *see also Collier v. Commissioner*, 108 F. App'x 358, 362 (6th Cir. 2004). Furthermore, even during the time period when ALJs had been required to complete PRTF forms, the ALJ's findings on the forms were "solely relevant" to whether the plaintiff had a severe impairment and whether the plaintiff's condition met or equaled the requirements of a listed impairment. *See Furst v. Commissioner*, No. 99-3581, 2000 WL 282909, at * 2 (6th Cir. Mar. 13, 2000) (citing Social Security Ruling 96-8p, 1996 WL 374184, at * 4 (S.S.A. July 2, 1996)). Plaintiff presented no argument or evidence indicating that she suffered from a listing-level mental impairment. Therefore, assuming *arguendo* that completion of a PRTF had been required, the ALJ's failure to do so in this instance constituted harmless error. *See Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988); *see also Thornsberry v. Commissioner*, 37 F. App'x 749, 751 (6th Cir. 2002).

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   August 7, 2006         /s/  Joseph G. Scoville
                                United States Magistrate Judge

---

[3]The DIB benefits regulation cited in plaintiff's brief (20 C.F.R. § 404.1520a) is obviously inapplicable. I assume that plaintiff intended to refer to the corresponding SSI regulation, 20 C.F.R. § 416.920a.

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).